Jessie MEJIAS–QUIROS, et al.,
Plaintiffs, Appellants,

v.

MAXXAM PROPERTY CORP.,
Defendant, Appellee.

Jessie MEJIAS–QUIROS, et al.,
Plaintiffs, Appellees,

v.

MAXXAM PROPERTY CORP.,
Defendant, Appellant.

Nos. 96–1691, 96–1759.

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1996.

Decided March 13, 1997.

Hector F. Oliveras–Delgado with whom Dario Rivera Carrasquillo, San Juan, PR, and Pinto–Lugo & Rivera were on brief, for defendant.

Eric M. Quetglas Jordan, San Juan, PR, with whom Quetglas Law Offices was on brief, for plaintiffs.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

In this diversity action, brought in the district court, Jessie Mejías Quiros and his wife sued Maxxam Property Corporation ("Maxxam") for negligence. Mejías charged that injuries that he suffered during a fight on Maxxam's resort property were due to Maxxam's failure to provide adequate security to him as a guest. The jury awarded Mejías and his wife separate damages for pain and suffering and, in his case, for medical expenses. Both sides have appealed.

A summary of the background events, largely not in dispute, is as follows. At the time of the incident, Mejías, then 24 years old, was vacationing at Maxxam's Palmas del Mar resort, located in Humacao, Puerto Rico. He and his wife planned to stay for a week with several friends and relatives at a villa in the Club Cala pool complex area of the resort. Around 11 p.m., on July 31, 1993, Mejías went for a stroll around the resort premises with his wife's brother-in-law, Francis Cardona, and his teenage neighbor, Jorge González.

The three men walked from the Club Cala area, across an adjacent parking lot, to a lawn located near the Palmas Inn Hotel and Casino. As many as 150 youths were gathered in smaller groups on the grass in front of the hotel, drinking and talking. There were apparently no hotel security officers in the immediate area. Mejías, Cardona and González joined the youths, sitting on the grass together, talking, and looking around to see if they knew anyone there. Later, Mejías noticed a young woman in a group nearby and encouraged González to go over and talk to her, saying something like "*hecha*, Jorge Tito," or "go for it, Jorge."

A young man sitting with the girl whom Mejías had noticed heard his remark and challenged it, standing up and loudly asking Mejías what was going on. In response, Mejías also got up, and a scuffle ensued. Mejías was hit several times on his head and back while seeking only to defend himself. Then, the fight was broken up by several other youths, and Mejías, Cardona and González left the scene. After they departed, a hotel security guard arrived to investigate, but since Mejías was gone, the guard took no action beyond questioning the youths still on the lawn.

Mejías and his companions walked back across the Club Cala parking lot to the pool complex and sat down on some outdoor stairs, about one or two minutes' walk from their villa. The time was almost 1:00 a.m. About 20 minutes later, eight to ten of the youths from the group Mejías had encountered earlier approached from the parking lot. One of them kicked Cardona in the chest; he fell into the bushes and then ran in search of help. Then, the youths beat Mejías about his head, face and body, using a hard blunt object for at least one blow and ultimately knocking him unconscious.

Mejías sustained several cuts and bruises on his head and face, as well as abrasions on his knees. He required stitches for cuts over his right eye and in his left upper lip, and has been left with scars. According to trial testimony by Mejías and medical experts, Mejías has suffered continuing headaches, mild depression, low self-esteem, and post-traumatic stress—all as a result of the encounter and injuries inflicted upon him. Surgery would be required to minimize the scarring.

Mejías and his wife, Zoribel Díaz, brought suit, charging that Maxxam had negligently failed to provide adequate security. The

jury agreed. It awarded Mejías pain and suffering damages of $200,000 and medical expenses of $25,000, and awarded his wife $50,000 for pain and suffering. Maxxam moved for a new trial, asserting that the verdict was contrary to the evidence, that a requested comparative negligence instruction should have been given, and that the damages were excessive. The trial court denied the motion.

On appeal, Maxxam no longer disputes the jury's finding that it was negligent, so the facts pertaining to this issue have not been developed. It argues instead that a new trial is warranted because the jury should have received a comparative negligence instruction and because the award of $25,000 for medical expenses was excessive. By a cross-appeal, Mejías asserts that under local law the district court should have awarded him attorney fees and pre-judgment interest due to Maxxam's alleged obstinacy in contesting the complaint.

We review *de novo* the district court's decision not to give a comparative negligence instruction. *Tatro v. Kervin,* 41 F.3d 9, 14 (1st Cir.1994). The issue is whether the evidence—viewed in the light most favorable to Maxxam, the party requesting the instruction—would have allowed a rational jury to find Mejías comparatively negligent. *Sullivan v. National Football League,* 34 F.3d 1091, 1107–09 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). Negligence, comparative or otherwise, is usually a jury issue, but only if there exists. evidence from which a rational jury could find negligence in the case at hand.

Maxxam argues that Mejías was comparatively negligent because he should have foreseen that his remark to González about the young woman sitting near them on the lawn would provoke a violent reaction from whatever young man accompanied her. Maxxam also points to Mejías' failure to report the first incident to hotel security, and it argues that he invited further trouble by moving to the outdoor Club Cala stairs instead of returning to his family's villa.

■ Puerto Rico holds hotels to a stringent standard of care with respect to their guests; it requires hotels to respond to various risks of harm with security measures, and it thus effectively exposes the hotels in certain circumstances to liability for injuries inflicted on guests by third parties. *See Coyne v. Taber Partners I,* 53 F.3d 454, 458 (1st Cir.1995). But Puerto Rico law reduces liability for "[c]oncurrent imprudence of the. party aggrieved." 31 L.P.R.A. § 5141. *See Torrent v. Continental Ins. Co.,* 314 F.Supp. 323, 325 (D.P.R.1970). Against this legal background, we agree that the evidence of comparative negligence was too thin to require that the issue be submitted to a jury in this case.

■ Although Mejías' comment may have been in bad taste, it was a single comment to a friend, and not to a third party, made in a casual and festive atmosphere. There is no indication that Mejías was belligerent. As for Mejías' decision not to report the incident but to move away to the Club Cala stairs, one witness testified that these stairs were as much as one hundred meters away from the first incident's location, and no evidence suggests that they were visible from the grass outside the hotel and casino.

We can find no case, and Maxxam has cited none, suggesting that Mejías' behavior constitutes negligence or could be viewed in that light by a reasonable jury. It might not take much more to create a jury issue: an offensive remark directed to the young lady whom Mejías had noticed could easily do; and, depending on circumstances, so might a refusal to leave the immediate area after the scuffle. But what occurred here is just too little to impute fault to Mejías. *Compare Torrent,* 314 F.Supp. at 325 (guest knew of dangerous condition).

■ Maxxam also appeals from the district court's denial of its motion for a new trial on the ground that the $25,000 medical damages award was excessive. The federal rule is that a jury verdict may be set aside, and a new trial granted, if the award is excessive or against the weight of the evidence.[1] An appeals court reviews the trial

---

1. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*

judge's denial of a new trial for abuse of discretion. *Gasperini,* —— U.S. at ——, 116 S.Ct. at 2225. We will overturn such a denial only if the damages awarded lack "a rational basis in evidence." *Air Safety, Inc. v. Roman Catholic Archbishop of Boston,* 94 F.3d 1, 4 (1st Cir.1996).

This latter standard accords considerable latitude both to the jury's award and the trial judge's decision not to set it aside. The general language ("rational basis") is given content by cases declaring that the verdict should stand unless it is " 'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand.' " *Segal v. Gilbert Color Sys., Inc.,* 746 F.2d 78, 80–81 (1st Cir.1984) (citations omitted). Nevertheless, there is an outer limit.

Certainly, the jury could find that Mejías would likely incur future medical expenses (no past expenses were claimed). Dr. Angel Chinea, a neurologist, explained that Mejías suffered from chronic headaches, dizziness and insomnia, which he had treated with painkillers and relaxants. Dr. Fernando Cabrera, a psychiatrist, testified that Mejías had chronic mild depression and post-traumatic stress disorder. Cabrera prescribed medication including a mild tranquilizer, and recommended future therapy.

But neither Chinea nor Cabrera offered any evidence as to the future cost of treating the conditions that they described. Dr. Carlos Portocarrero provided the only evidence regarding the actual cost of future medical treatment. He testified that reconstructive surgery to minimize Mejías' facial scars, which resulted from the incident, would cost between $3,000 and $4,000. Thus, the only specific figures offered to the jury supported, at most, an award of $4,000.

Given the symptoms, any projection of future medical expenses beyond this figure could be only a fairly loose estimate. But without some figures from the doctors or others with useful knowledge, the jury was

poorly equipped to determine what the medicines or therapy sessions would cost and how much or many of each might be required. And it is only these concrete expenses that are at issue; the suffering itself (*e.g.,* from headaches and depression) was covered under the jury instructions by the much larger award for pain and suffering.

Deciding whether enough evidence has been presented can depend not only on what is offered but on what reasonably could be expected. On pain and suffering, courts readily tolerate estimates by the jury based on a description of the injury. *E.g., Williams v. Missouri Pac. R.R. Co.,* 11 F.3d 132, 135 (10th Cir.1993); *see McCormick on Damages* § 88, at 318 (1935). But the cost of individual medicines and medical visits can easily be provided by experts able to offer informed forecasts beyond the ken of jurors.

Accordingly, the courts have been very reluctant to allow damages for future medical expenses in the absence of medical testimony that goes beyond mere assertions that office visits or medicines might be needed. *E.g., Wood v. Day,* 859 F.2d 1490, 1494 (D.C.Cir. 1988); *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1427–28 (5th Cir.1988). The Tenth Circuit put the matter more generally in *Williams,* by saying: "Unlike general damages for pain and suffering, which are not susceptible to proof by a dollar amount, medical expenses and loss of earnings must be proved by evidence demonstrating the reasonable value of those losses." 11 F.3d at 135.

We think that the medical expense award in this case, to the extent it exceeded the $4,000 figure given for surgery, lacked any rational basis. There may be simple cases where, out of common experience, the jury can make such estimates, but hardly here and in so large an amount. The doctors who testified here, providing the groundwork for the handsome award for pain and suffering, could have been asked to quantify the future costs of medicine and office visits. Doubt-

---

§ 2807, at 78–79 (2d ed. 1995). If local law placed a substantive cap on medical damages, it would control, *Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, ———— ——, 116 S.Ct. 2211, 2220–21, 135 L.Ed.2d 659 (1996), but

Puerto Rico case law suggests no such departure from ordinary practice, *see, e.g., Rodríguez González v. Ponce Cement Corp.,* 98 P.R.R. 196, 213 (1969).

less, the jury did the best it could without evidence; but the evidence should have been supplied.

 Although the award of medical costs is excessive, we cannot order a reduction to the maximum $4,000 figure permitted by the evidence. This might appear odd, because trial judges and appellate courts often "decide" factual issues otherwise left to juries where the evidence is such that a reasonable jury could decide the issue only one way. That is what happens when a judge directs a verdict or—as here—refuses to instruct on a defense for which there is insufficient evidence. But damages are different.

The reason is the Supreme Court's reading of the Seventh Amendment provision that "no fact tried by a jury shall be reexamined [in a federal court], than according to the rules of the common law." Construing this language, the Supreme Court has held that a jury verdict may be set aside where "palpably and grossly inadequate or excessive" but that "both parties remain entitled" to a jury determination as to damages by means of a new trial. *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). The Court then went on to temper the holding by reluctantly approving remittitur practice. *Id.* at 484–88, 55 S.Ct. at 300–02.

Remittitur practice, perhaps not altogether easy to square with *Dimick*'s literal language about the entitlement of "both parties," is also well established. *See Air Safety*, 94 F.3d at 6; Wright, *supra*, § 2820, at 216–17. Here, the practice permits us to order the district court to afford Mejías a reasonable time in which to file a written acceptance of a reduced award of $4,000 for medical expenses; to deny a new trial if Mejías accepts the remittitur; and otherwise to vacate that portion of the judgment and order a new trial thereon.

 Finally, Mejías claims that Maxxam acted obstinately and that he is therefore entitled to an award of attorney fees and prejudgment interest under P.R.R.Civ.P. 44.1(d) and 44.3(b). Such an award is allowed if the trial court finds that a litigant has been "unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 126 (1st Cir.1991).

 For obvious reasons, a trial court's denial of such damages is rarely upset. *Quinones–Pacheco v. American Airlines, Inc.*, 979 F.2d 1, 7–8 (1st Cir.1992). Mejías has offered three specific instances of alleged obstinate conduct. We have examined each with some care and conclude that the conduct, largely refusals to concede certain facts, were either trivial (in one case) or defensible (in several others). Mejías' most far-reaching claim—that the hotel was obstinate in denying its own negligence and in litigating the issue—cannot have been seriously intended.

The judgment of the district court is *vacated* insofar as it awards $25,000 to Mejías for medical costs and otherwise *affirmed*, and the matter is *remanded* to the district court for a new trial on medical costs unless Mejías accepts a remittitur reducing damages to $4,000 on this element of his damage claims.

*It is so ordered.*