Ananias **GRAJALES–ROMERO,**
Plaintiff, Appellee,

v.

**AMERICAN AIRLINES, INC.,**
Defendant, Appellant.

Ananias Grajales–Romero,Plaintiff,
Appellant,

v.

American Airlines, Inc., Defendant,
Appellee.

Nos. 98–1985, 98–2144.

United States Court of Appeals,
First Circuit.

Heard June 7, 1999.

Decided Oct. 26, 1999.

Luis A. Oliver–Fraticelli, with whom Jay A. García–Gregory and Fiddler, González & Rodríguez were on brief for American Airlines, Inc.

José Luis Ubarri–García, with whom David W. Román and Brown & Ubarri were on brief for Ananías Grajales–Romero.

Before LYNCH, NOONAN,* and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

American Airlines, Inc. appeals from a judgment of $150,000 in favor of Ananías Grajales–Romero, who was injured by a collapsing check-in counter sign at an airport in St. Kitts. American claims that the court erred in allowing the case to go to the jury on the plaintiff's theory that American was liable for the negligence of Executive Airlines, d/b/a American Eagle, which American argues actually owned, operated, and maintained the check-in counter. American further claims that there was insufficient evidence of negligence to sustain the jury verdict in this case, and that the court erred by not vacating or remitting the damages award, striking certain defense witnesses, admitting some evidence offered by plaintiff, and refusing to give several jury instructions proposed by American. Grajales cross-appeals, claiming that the court erred in not awarding attorney's fees on the basis of the "obstinacy" of the defendants. We affirm.

## I.

**Factual background**

We present the facts as a jury might have found them, consistent with the record but in the light most favorable to the verdict. *See Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 151 (1st Cir.1990). On July 29, 1994, Plaintiff Ananías Grajales–Romero ("Grajales") was waiting in line at an American Eagle[1] check-in counter in the St. Kitts airport for a return flight to San Juan, Puerto Rico. His acquaintance Terry Connor had accompanied him to the check-in counter. Connor attempted to load Grajales's luggage onto the weigh-in scale adjacent to the check-in counter. In doing so, he grabbed onto an ashtray built into the countertop to gain some leverage in lifting the luggage. The countertop was attached by a hinge to the vertical front facing of the counter. When Connor pulled on the ashtray, the countertop came loose, and pivoted forward on its hinge. A metal signpost and sign were attached to the countertop, and this signpost and sign also pivoted forward with the countertop. As this was happening, plaintiff Grajales was looking down at his ticket. The signpost and/or sign struck Grajales on the top of his head, opening up a two-inch long wound. Although he did not lose consciousness or fall to the floor, he was taken to the St. Kitts hospital, where he received four stitches. After the accident, Grajales

---

* Of the Ninth Circuit, sitting by designation.

1. American Eagle is operated by Executive Airlines, a Delaware corporation with its principal place of business in Puerto Rico. American Airlines, Inc. ("American") is a Delaware corporation with its principal place of business in Fort Worth, Texas. Executive d/b/a American Eagle is one of several small regional Airlines owned by AMR Eagle, Inc. In turn, American Airlines, Inc. and AMR Eagle, Inc. are wholly owned by a publicly-traded holding company, AMR Corp.

experienced neck pains, headaches, and forgetfulness. He was diagnosed by a neurologist as suffering from post-concussion syndrome and a cervical sprain secondary to the accident.

Grajales filed a complaint against American, AMR Corp., and AMR Eagle, Inc. in the federal district court for the District of Puerto Rico on July 28, 1995. On February 11, 1997, the district court dismissed the claims against co-defendants AMR Corp. and AMR Eagle, Inc. for lack of personal jurisdiction. During the course of trial, held from May 20 to May 27, 1998, American claimed that its witnesses Tomas del Valle and Fred Voltaggio were unavailable because they had been transferred to other positions with American. In their place, American offered the testimony of employees who now held the posts vacated by del Valle and Voltaggio; however, the court struck the replacement witnesses because they had not been disclosed in the course of pre-trial discovery. While Voltaggio eventually testified, del Valle did not, and the court granted a missing witness instruction telling the jurors that they could infer that the testimony of del Valle would have been unfavorable to American. The court refused to give an instruction on the doctrine of res ipsa loquitur requested by Grajales, and refused several instructions offered by American. The jury found American liable in the amount of $150,000. The court issued its judgment accordingly, and refused Grajales' claim for attorney's fees under Puerto Rican law. Both parties appealed.

## II.

### Agency by Apparent Authority

American argues that there was insufficient evidence to support a finding that it was liable under agency principles for any negligence by Executive Airlines. It claims that the theories advanced by Grajales to establish American's liability for the accident—namely, agency by estoppel and agency by apparent authority—were a subterfuge allowing Grajales to forum-shop into federal court, where he was entitled to a jury trial. *See Marshall v. Perez Arzuaga,* 828 F.2d 845, 849 (1st Cir.1987) ("Puerto Rico, a civil law jurisdiction, never uses juries in civil cases."). We will address only Grajales's "apparent authority" claim, which provides an adequate basis for American's liability.

■ Under Puerto Rico law, an apparent principal may be held liable for the acts of its apparent agent where the apparent principal's actions "led the plaintiffs to reasonably believe [in its] representation" of authority and control over the apparent agent, through the apparent principal's conduct, including its "silence, evasive language and appearances." *Berríos v. U.P.R.,* 116 D.P.R. 88, 16 P.R. Offic. Trans. 112, 122 (1985).[2] The Supreme Court of Puerto Rico has applied the doctrine where "persons who used the services of the [apparent agent] could not possibly know or had no way of knowing that the entity they were dealing with was not" the apparent principal or an agent thereof. *Id.* at 122–23. The Court has also applied the doctrine where the plaintiff "trusted in good faith" in defendant's conduct, and where that "trust could lead a reasonable person to believe that in fact there was a principal-agent relationship." *Vega v. Medical Serv. Admin.,* 117 D.P.R. 138, 17 P.R. Offic. Trans. 163, 173 (1986).[3]

■ The evidence produced at trial was more than sufficient to allow a reasonable

---

**2.** The *Berríos* opinion implies that Puerto Rico courts do not title this doctrine "apparent authority," *see Berríos,* 16 P.R. Offic. Trans. at 123 n. 2, but the Supreme Court of Puerto Rico has used the language of apparent authority elsewhere. *See Vega v. Medical Serv. Admin.,* 117 D.P.R. 138, 17 P.R. Offic. Trans. 163, 173 (1986).

**3.** *See also Marquez Vega v. Martinez Rosado,* 116 D.P.R. 397, 16 P.R. Offic. Trans. 487, 494–95 (1985) (hospitals have been held liable under "apparent or ostensible agency" doctrine "when a patient first comes to a hospital in search of help and he understands, or is given the impression, that all the medical staff attending him is employed by the hospital, regardless of whether or not it is.").

jury to conclude that Grajales trusted in good faith in conduct that "could lead a reasonable person to believe that in fact there was a principal-agent relationship." Specifically, the jury could have found that Grajales's ticket, issued by American Airlines, identified the carrier as "AA," an abbreviation for American Airlines. The telephone information line for American Eagle flights is the American Airlines telephone information line. The passenger check-in counters in both San Juan and St. Kitts bore American Airlines logos as well as American Eagle logos. The in-flight magazines on Grajales's flight were the American Airlines magazines "American Ways" and "Latitudes." The personnel staffing the flights wore uniforms and nametags closely resembling American Airlines uniforms and nametags. American Airlines' destination guide (a schedule of flight availability) lists St. Kitts as a destination. Grajales testified that he relied on such information in choosing to fly with American Eagle, and that he assumed it was part of American Airlines. A reasonable jury could conclude from these facts that American's conduct led Grajales reasonably to believe that there was in fact a principal-agent relationship between American and Executive Airlines d/b/a American Eagle, and thus American would be liable for any negligence on the part of Executive.

4. One judge on this panel believes that there was adequate circumstantial evidence of negligence without reaching the issue of res ipsa loquitur, and would affirm on that basis.

5. In his closing argument, Grajales's counsel opined that a photograph of the counter introduced into evidence showed that its hinges were on the edge facing out towards the customers, which meant the counter "opens towards the public, not towards the agent that is behind the counter." He then implied that it would have been preferable to have the countertop tilt back towards the agent. This argument, without more supporting evidence, does not permit an inference that American violated its duty of care, especially since there was no evidence introduced which showed that having the countertop fold backwards was compatible with the other functions of

## III.

## Sufficiency of the Evidence of Negligence

### (a) Res Ipsa Loquitur

American states that

[p]laintiff produced no evidence—either through customary airline practices, past practices, or expert testimony—to establish a standard of care by which American should have operated. Further, plaintiff presented no evidence regarding the inspection, maintenance, and operation of the ticket counter, and made no attempt to explain in what manner any such conduct might have constituted negligence.

From these assertions, and the fact that the court refused to give the jurors Grajales's proposed res ipsa loquitur instruction, American argues that "[n]o jury could reasonably conclude that American exercised less than reasonable care from the unexplained fact that an accident occurred."

We agree with American that Grajales did not produce either direct or circumstantial evidence explaining how American violated its duty of care.[4] Grajales offered no evidence, for example, suggesting that the ticket counter had been improperly designed, installed, maintained, or operated.[5] Instead, Grajales relied on

the counter (e.g. housing the reservations computer terminal).

At trial, Grajales attempted unsuccessfully to introduce evidence that the counter in question was fitted with retaining hooks to prevent a recurrence of the accident that injured him. This evidence was excluded as evidence of subsequent remedial measures for the purpose of proving negligence. *See* Fed. R.Evid. 407. At oral argument before us, Grajales argued that photographs of the counter which were introduced as evidence showed these retaining hooks, and that the jury could have inferred from the presence of the hooks in the photograph that they were taken to remedy a design defect. This argument strains credulity. Even a close examination of the photographs does not make any remedial measures apparent.

the fact of an unexpected occurrence, arguing that the counter top would not have fallen over and struck him unless American had violated its duty of care. The Supreme Court of Puerto Rico has ruled that the fact of an unexplained occurrence cannot establish an inference of negligence unless the conditions of res ipsa loquitur are satisfied: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of defendant; [and] (3) it must not be due to any voluntary action on the part of plaintiff." *See Community Partnership v. Presbyterian Hosp.*, 88 P.R.R. 379, 386 (1963). Given the lack of direct or other circumstantial evidence on American's violation of its duty of care, we must consider whether the conditions of res ipsa loquitur were satisfied here.

We conclude that they were. Indeed, the first two elements of res ipsa loquitur were easily established. A reasonable jury could have concluded that the accident was of a kind which "ordinarily does not occur in the absence of someone's negligence," and that the accident was "caused by an ... instrumentality within the exclusive control of [the] defendant." *See Colmenares Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102, 1106 (1st Cir.1986) ("[R]es ipsa loquitur applies [if] ... the defendant is responsible for the instrumentality") (applying Puerto Rico law).

■ The res ipsa loquitur requirement that the accident not be caused by any "voluntary action" on the part of the plaintiff posed a more difficult challenge for Grajales. American argues that a res ipsa loquitur inference was unreasonable because the evidence indicates that plaintiff's acquaintance Connor took the "voluntary action" of pulling on the counter-top. Even if Connor's actions could be attributed to Grajales, American's argument misses its mark. The test is not whether the plaintiff took any voluntary action, but whether that voluntary action can be blamed for the accident. *See De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 126 (1st Cir.1991) (plaintiff must be "free of voluntary responsibility for the occurrence") (applying Puerto Rico law). The evidence here was sufficient to support a finding that Grajales and his colorable agent Connor were blameless, having done nothing more than "attempt to [use the instrumentality] in the ordinary manner," *Colmenares Vivas*, 807 F.2d at 1107. So long as the jurors could have concluded from the evidence that Connor's use of the counter for leverage constituted a normal usage of the counter by a customer, the jury could have inferred American's negligence.

■ While there was sufficient evidence on each of the conditions of res ipsa loquitur, the district court did not provide the jury with a res ipsa loquitur instruction, as Grajales had requested. We must therefore consider an argument implicit in American's challenge to the sufficiency of the evidence of negligence—that a jury verdict cannot be justified on the basis of res ipsa loquitur when the jurors were never instructed on the doctrine.

■ Puerto Rico's statement of the three elements of res ipsa loquitur is derived from the first edition of a well-known treatise on evidence, 4 Wigmore, *Evidence* § 2509 (1st ed.1905). *See* W. Page Keeton et al., *Prosser and Keeton on Torts* 244 (Lawyer's 5th ed.1984). That origin confirms that a res ipsa loquitur instruction explains to the jury a specific form of permissible inference from circumstantial evidence of negligence. Given this purpose, jurors who can draw the inference of negligence even without a res ipsa loquitur instruction should be permitted to do so. Justice Traynor came to the same conclusion:

The doctrine of res ipsa loquitur concerns a type of circumstantial evidence upon which plaintiff may rely to discharge his burden of proving defendant's negligence.... There is no rea-

son why the jury may not draw that inference without, as well as with, a specific instruction authorizing them to do so.

*Rose v. Melody Lane,* 39 Cal.2d 481, 247 P.2d 335, 339 (Cal.1952).[6] In this case, the jurors were adequately instructed on inference and circumstantial evidence, and Grajales made the specific inference contemplated by a res ipsa loquitur instruction the linchpin of his theory of the case.[7] Given that there was sufficient evidence on each of the res ipsa loquitur requirements, the jurors were entitled to make the res ipsa loquitur inference even in the absence of a specific instruction.[8]

**(b) Proximate Cause**

■ American protests that there was insufficient evidence to allow the jury to find that its negligence was the proximate cause of Grajales's injuries. The res ipsa loquitur doctrine only permits an inference that the defendant engaged in negligent conduct. *See Colmenares Vivas,* 807 F.2d at 1104. The plaintiff still must prove that the negligent conduct was the proximate cause of the accident. *Cf. Donnelly v. National R.R. Passenger Corp. (Amtrak),* 16 F.3d 941, 946 (8th Cir.1994) ("res ipsa loquitur has no application to proximate cause") (North Dakota law); *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1328 (11th Cir.1982) (same) (Alabama law).

■ In Puerto Rico, to establish proximate cause, the plaintiff must prove that an accident was foreseeable and could have been avoided if the defendant had not breached its duty of care. *See Coyne v. Taber Partners I,* 53 F.3d 454, 459 (1st Cir.1995); *Marshall v. Perez Arzuaga,* 828 F.2d 845, 847 (1st Cir.1987). The defendant can defeat proximate causation by proving the occurrence of an "intervening cause" that was *not* foreseeable. *See Malave–Felix v. Volvo Car Corp.,* 946 F.2d 967, 972 (1st Cir.1991).

■ A reasonable jury could easily have found that Grajales satisfied his proximate causation burden. *See Coyne,* 53 F.3d at 460 ("[S]uch questions ordinarily are grist for the factfinder's mill."). There was ample evidence produced at trial that

---

**6.** We find additional support for this proposition in the case law of other jurisdictions as well. *See Siegler v. Kuhlman,* 3 Wash.App. 231, 473 P.2d 445, 448 n. 8 (Wash.Ct.App. 1970) (citing cases), *rev'd on other grounds,* 81 Wash.2d 448, 502 P.2d 1181 (Wash.1972) (en banc); *Powers v. Hunt–Wesson Foods, Inc.,* 64 Wis.2d 532, 219 N.W.2d 393, 397 (Wis.1974); *United States v. Hull,* 195 F.2d 64, 65 (1st Cir.1952).

**7.** Grajales argued to the jury that

the counter was to be used precisely for [the] purpose [Connor used it for.] People lean on counters. . . .

Ladies and Gentlemen, you need to use your own experience, your own life experiences. Counters don't flip open that way unless someone forgot to latch it, forgot to secure it. It wasn't secured. . . .

The accident occurred because the counter wasn't secured, and you can reach that conclusion based on your own life experiences.

**8.** By affirming that a jury may find res ipsa loquitur without a specific instruction, we do not imply that a trial judge should withhold such an instruction on the grounds that circumstantial evidence and inference instructions are adequate. The res ipsa loquitur doctrine "has assumed the status of a substantive rule of [state] law," *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1324 (11th Cir.1983). Thus the res ipsa loquitur instruction should be given if the three conditions of res ipsa loquitur are satisfied and the relevant state tort law allows an inference of negligence under those conditions. *Cf. Kelliher v. General Transp. Serv., Inc.,* 29 F.3d 750, 754 (1st Cir.1994) ("Although the determination of the substance of a jury instruction in a diversity case is a matter of state law, the grant or denial thereof is a matter of procedure controlled by federal law.") The instruction assists jurors in the analysis of a particular kind of negligence/circumstantial evidence case. The failure to instruct on res ipsa loquitur in circumstances where the relevant law would support the application of the doctrine may constitute an abuse of discretion and reversible error. *See, e.g., Stewart v. Ford Motor Co.,* 553 F.2d 130, 141 (D.C.Cir.1977); *Olsen v. States Line,* 378 F.2d 217, 220–21 (9th Cir.1967). Here we do not reach that issue because Grajales prevailed without the instruction.

American's negligence—its failure to secure the countertop properly—created a foreseeable risk of an accident of the general type involved in this case. *See Malave–Felix*, 946 F.2d at 972 ("precise risk" or "exact result" need not be foreseeable). Moreover, American did not offer sufficient evidence of an *unforeseeable* intervening cause to compel us to reverse. As we noted in our discussion of res ipsa loquitur, a reasonable jury could have concluded that Connor's actions were blameless. For the same reasons, a jury could have concluded that a customer's use of the counter for leverage was not the type of unforeseeable event that creates an "intervening cause" and clears American of causal responsibility.

## IV.

### American's miscellaneous objections

#### (a) Exclusion of substitute witnesses

In response to Grajales's interrogatories (and also in an initial scheduling memorandum), American indicated that its trial witnesses would include Tomas del Valle, who was president of Executive Airlines at the time of the accident, and Fred Voltaggio, who was Manager for Support Services for American Airlines at that time. American then attempted, in its proposed pretrial order, to substitute José Machado, current Vice President of Flight Operations for Executive Airlines, for del Valle, who had left Executive Airlines to become the Managing Director for American's operations at Los Angeles International Airport. American also attempted to substitute Ernesto Quidgley, Manager for Support Services for American Airlines, for Voltaggio, who had become regional manager for American Airlines' Carribean cargo sales by the time of trial.[9]

■ Grajales filed a motion before a magistrate judge opposing the witness substitutions on the grounds that the new witnesses had not been properly disclosed during the course of discovery. The magistrate judge granted that motion on May 14, 1998. Four days later, American filed a motion before the trial court seeking reconsideration of the magistrate judge's ruling. The trial court agreed to reconsider the matter but, in an oral order on May 20, 1998, it reaffirmed the magistrate judge's ruling and excluded the substitute witnesses as a discovery sanction for American's failure to disclose them in the appropriate pretrial disclosures as required by Fed.R.Civ.P. 37(c)(1).

■ Rule 37(c)(1) provides an exclusionary sanction for failures to disclose witnesses as required by Fed.R.Civ.P. 26: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial … any witness … not so disclosed." A district court's Rule 37 sanctions decision is reviewed for abuse of discretion. *See Barreto v. Citibank*, 907 F.2d 15, 16 (1st Cir.1990) (per curiam). Here, it is undisputed that Machado and Quidgley were not disclosed in response to plaintiff's interrogatories, as required by Rule 26. American offered no excuse for failing to disclose Machado and Quidgley while discovery was open, stating only that it was now "forced" to call upon unannounced witnesses since del Valle and Voltaggio, its originally designated witnesses, no longer occupied the same positions they held at the time of the accident. The court noted, however, that del Valle and Voltaggio, regardless of any change in position, were currently employees of American, subject to its control and available to testify. On these facts, we find no abuse of discretion in the court's refusal to allow unannounced witnesses to testify.

#### (b) "Missing Witness" Instruction

■ Voltaggio testified at trial; however, del Valle, while present during some of

---

9. Voltaggio's testimony indicated that he "still work[ed] for American Airlines," although American's counsel argued otherwise before the court.

the trial, failed to appear on the day the court expected him to testify. Upon Grajales' request, the court gave a missing witness instruction.[10]

A "missing witness" instruction is permissible when a party fails to call a witness who is either (1) "favorably disposed" to testify for that party, by virtue of status or relationship with the party or (2) "peculiarly available" to that party, such as being within the party's "exclusive control." *United States v. DeLuca*, 137 F.3d 24, 38 (1st Cir.1998). We review the grant and denial of missing witness instructions for abuse of discretion. *See id.*

Del Valle had appeared in court during part of the trial but then failed to reappear when his testimony was postponed until the next business day. The court found that del Valle, an employee of American, was under its control, and that American had offered no acceptable justification for del Valle's absence. Thus there was ample evidence that del Valle's status left him "favorably disposed" to American and that he was "peculiarly available" to the airline. *Id.* Either one of these grounds is sufficient to justify a missing witness instruction. Moreover, the court suggested that American had tactical reasons for not producing del Valle. Specifically, del Valle's move from American Eagle to American

Airlines undercut American's efforts to emphasize the minimal nature of the connection between the airlines.[11] We find no abuse of discretion in the court's issuance of a missing witness instruction.

**(c) Admission of testimony about a non-testifying defense expert's report**

Grajales submitted to a medical examination performed by Dr. Juan J. Fumero–Pérez ("Fumero"), an expert witness hired by American. American provided Dr. Fumero's report to Grajales, as required under Fed.R.Civ.P. 35(b).[12] In this report, Dr. Fumero concluded that Grajales was suffering from a post-concussion syndrome. Apparently unhappy with this news, American notified Grajales that it was designating Fumero a non-testifying expert witness under Fed.R.Civ.P. 26(b)(4)(B). At trial, the court allowed Grajales to extract a brief mention of Fumero's conclusions from both American's medical expert and two medical experts hired by Grajales, Dr. Boris Rojas–Rodriguez and Dr. Maria T. Margarida Julia. The court also allowed Grajales to introduce evidence that American had initially hired Fumero. American argues that the references to the Fumero report were inadmissible hearsay and violated Fed.R.Civ.P. 26(b)(4)(B).[13] American also argues that evidence of the fact that it

---

10. The court gave the following instruction:

> Mr. Tomas del Valle, who was the president of Executive Airlines, Inc., at the time that the events occurred, was announced as a witness for Defendant, American Airlines. His presence as a witness has now been withdrawn. If a party, members of the jury, announces a witness, as Mr. del Valle was, who possesses knowledge about the facts in issue and who is reasonably available to the party and is not equally available to the other party, then you may infer that the testimony of that witness is unfavorable to the party who could have called him and did not.

11. The court stated that del Valle "held a key position in Executive Airlines, Inc., and he now holds a key position in American Airlines, Inc., and [it is a very reasonable inference that] you did not want the jury to know

this." Counsel for Grajales also argued, at trial and on appeal, that del Valle's testimony in a recent case was damaging to American on the "apparent authority" issue.

12. It appears from the record that Grajales voluntarily submitted to the examination, without requiring American to obtain an order under Rule 35(a). A voluntary examination, however, does not exempt American from the Rule 35(b) requirement that it provide Grajales with a copy of the examining physician's report. Rule 35(b)(3) states: "This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise."

13. Rule 26(a)(2)(B) requires "a complete statement of all opinions to be expressed [by an expert] and the basis and reasons therefor."

hired Fumero was unduly prejudicial under Fed.R.Evid. 403.[14]

 We decline to consider American's hearsay challenge to this evidence because it was not presented below. Assuming arguendo that American's other objections were valid, we find that any error in the admission of this evidence was harmless. *See* Fed.R.Civ.P. 61.[15] Grajales invoked only brief references to the Fumero report from the three experts, and Fumero's conclusions were cumulative of evidence presented convincingly and at great length by Grajales's experts. American's "substantial rights" were thus unaffected. *Id.*

### (d) American's proposed instructions

 American objects to the court's refusal to give three proposed jury instructions. "The function of the appellate court with respect to jury instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law." *Harrington v. United States,* 504 F.2d 1306, 1317 (1st Cir.1974). "Beyond that, the district court's choice of jury instructions is a matter of discretion." *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 564 (1st Cir.1986); *see also Kelley v. Airborne Freight Corp.,* 140 F.3d 335, 355 (1st Cir. 1998) (reviewing refusal of instruction for abuse of discretion).

### (1). *Use of trademark as evidence of apparent authority*

 The court refused to give American's proposed final instruction # 25,

which stated in relevant part that "[t]he mere use of the trademark name, logo and color scheme by a third party is not a legal indication that the owner of the name or logo has actual or apparent control" over the apparent agent. The court did give a broader instruction on apparent authority, not challenged on appeal, which closely tracked the Puerto Rico Supreme Court's articulation of the doctrine in *Berríos.* The failure to include a more detailed, supplemental instruction, even if accurate, is not error. *See Marbucco Corp. v. Suffolk Constr. Co.,* 165 F.3d 103, 106 (1st Cir.1999).

### (2). *Failure to maintain proper medical records*

 Dr. Rojas, a neurologist, examined Grajales and testified on his behalf as an expert witness. He was not, however, Grajales' treating physician and the medical examination was performed solely to assist Dr. Rojas in the preparation of his testimony. Dr. Rojas testified that he prepared his report on Grajales from handwritten rough notes and then discarded the notes. American requested an instruction stating that a doctor's failure to "properly maintain his medical records ... diminishes the effectiveness of the records as a reference tool for evaluation of the treatment, attention and care the doctor gave the patient" and "should be considered when evaluating the credibility of the doctor regarding the treatment he gave the patient." The court refused to give this instruction, ruling that the stated authority therefor, *Sharon Riley v. Rodrí-*

---

14. American also argues that Grajales waived his right to use the Fumero report because he failed to meet the court's deadline "[for] announc[ing] Dr. Fumero's report as impeachment evidence of defendant's witness, Dr. Victor Mojica." The court, however, concluded that Grajales was not violating this order by simply asking witnesses whether they were aware of Fumero's conclusions. "[W]e are loathe to upset a district court's interpretation of its own order," *Vulcan Tools of Puerto Rico v. Makita USA, Inc.,* 23 F.3d 564, 566 (1st Cir.1994), and we decline to do so here.

15. Rule 61 reads: "No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

*guez de Pacheco,* 119 D.P.R. 762, 780 (1987), was distinguishable as a case where a physician was evaluating a patient for the purposes of treatment and not solely for litigation purposes. That distinction is obvious from the wording of the instruction. In any event, the jury could have drawn the inference described without instruction if they found that the facts merited it. We find no abuse of discretion in the court's refusal to give this instruction.

*(3). Definition of inference*

 American submitted two supplemental instructions on the definition of inference a few hours before the jury was to be instructed. The court refused to consider these new supplemental instructions because they had been offered after the court's announced deadline for such instructions. The refusal to consider these instructions as untimely was not an abuse of discretion. *See Senra v. Cunningham,* 9 F.3d 168, 171 (1st Cir.1993).

**V.**

**Reasonableness of the Damages Award**

American argues that there was insufficient evidence to support the award of $150,000. Pursuant to the federal rule, "[a] verdict should stand unless it is 'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand.'" *Segal v. Gilbert Color Sys., Inc.,* 746 F.2d 78, 80–81 (1st Cir. 1984). Although the defendant faces a heavy burden in meeting this standard, excessive damage awards are not immune from review. *See, e.g., Koster v. Trans World Airlines, Inc.,* 181 F.3d 24, 35–36 (1st Cir.1999) (finding $716,000 award for emotional distress caused by age discrimination to be excessive, and limiting recovery to $250,000). A reasonable jury, crediting the testimony of Grajales' medical experts, could have found that Grajales continued to suffer from both chronic neck pain and a loss of cognitive functions, including concentration and memory. An award of $150,000 for such damages was not excessive.

American also argues that the Supreme Court of Puerto Rico reviews awards for consistency with other awards in similar cases; that the district court should have similarly reviewed the jury's award here, in accordance with the United States Supreme Court's pronouncement in *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), that a substantive state law standard for review of jury awards must be applied by federal district courts hearing cases under diversity jurisdiction; and that the award in this case is excessive because it is inconsistent with awards approved by the Supreme Court of Puerto Rico in similar cases. In a recent case we expressly rejected this *Gasperini* argument, based on our reading of Puerto Rico case law: "If local law placed a substantive cap on ... damages, it would control, [citing *Gasperini* ], but Puerto Rico case law suggests no such departure from [the] ordinary practice" of reviewing awards under the federal standards for judging excessiveness, outlined above. *Mejias–Quiros v. Maxxam Property Corp.,* 108 F.3d 425, 427 n. 1 (1st Cir.1997). We therefore find no reason to vacate or modify the jury's award of damages.

**VI.**

**Grajales' Cross–Appeal: Attorney's Fees**

Plaintiff-cross appellant Grajales claims that under Puerto Rico law, *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 18 P.R. Offic. Trans. 823, 830 (1987), a party engages in obstinacy when it merely answers a complaint and denies responsibility for a plaintiff's damages, even if it accepts that responsibility later. Puerto Rico's Rules of Civil Procedure 44.1(d) and 44.3(b) permit respectively the award of attorney's fees and prejudgment interest when a party has been, in the court's judgment, obstinate. *See 32*

L.P.R.A.App. III, R. 44.1(d), 44.3(b). When Puerto Rico law supplies the basis for decision in a diversity case, federal courts must apply Rule 44.1(d), *Quiñones–Pacheco v. American Airlines, Inc.,* 979 F.2d 1, 7 n. 8 (1st Cir.1992), and application of Rule 44.3(b) would seem to follow. However, as Grajales concedes, a previous panel of this court, in *Mejias–Quiros v. Maxxam Property Corp.,* 108 F.3d 425, 429 (1st Cir.1997), rejected (years after the *Fernández* decision [16]) the very same claim of obstinacy that Grajales raises here. We agree with the *Mejias–Quiros* panel that this argument "cannot [be] seriously intended." [17] *Id.*

*Affirmed.*

---

16. In *Fernández,* the defendant had denied in its answer factual allegations such as the date of an accident, the fact that the accident occurred, the identity of the driver of its truck, the existence of insurance coverage, and so forth. *See Fernández,* 18 P.R. Offic. Trans. at 832. These examples fit the general standard laid out in *Fernández:* "attorney's fees should be imposed in actions which result in a litiga-

tion that could have been avoided, which prolongs it needlessly, or that obliges the other party to embark on needless procedures." *Id.* at 830 (citations omitted).

17. Similarly, Grajales' request for sanctions for American's "filing this frivolous appeal" is denied.