# United States Court of Appeals
## For the First Circuit

No. 13-1384

MARIBEL VÁZQUEZ-ROBLES,

Plaintiff, Appellee,

v.

COMMOLOCO, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson and Selya, Circuit Judges,
and McConnell,[*] District Judge.

Thomas H. Hefferon, with whom John B. Daukas, Sarah K. Frederick, Justin M. Kahler, and Goodwin Procter LLP were on brief, for appellant.
Alejandro Bellver Espinosa, with whom Bellver Espinosa Law Firm was on brief, for appellee.

June 27, 2014

---

[*]Of the District of Rhode Island, sitting by designation.

**SELYA, Circuit Judge.** No principle is more firmly embedded in American jurisprudence than this one: when a claim is proffered that threatens a person's life, liberty, or property, that person is entitled to notice and an opportunity to be heard before a court awards any substantial relief. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In federal court practice, this due process guarantee is facilitated by Rule 4 of the Federal Rules of Civil Procedure — a rule regulating service of process. Absent waiver or consent, a judgment that is rendered without lawful service of process is null and void. See Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 23 (1st Cir. 1992). So it is here.

## I. BACKGROUND

On July 26, 2012, plaintiff-appellee Maribel Vázquez-Robles commenced a civil action in the United States District Court for the District of Puerto Rico against her former employer, defendant-appellant CommoLoCo, Inc. Her complaint alleged workplace discrimination claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213; Title VII of the Civil Rights Act of 1964, id. §§ 2000e to 2000e-17; and local law. On August 1, the plaintiff attempted to serve the summons and complaint by serving Prentice-Hall Corporation System Puerto Rico, Inc. (Prentice), which she believed to be the defendant's registered agent for service of process in Puerto Rico. The

-2-

defendant denies that Prentice was its registered agent at the time, and there is no evidence that Prentice ever forwarded the papers to the defendant.

When no answer was filed, the plaintiff moved for, and on September 5 obtained, an entry of default. See Fed. R. Civ. P. 55(a). The district court later empaneled a jury to liquidate the defaulted claims; and the jury — again without any notice to or appearance by the defendant — awarded the plaintiff $935,000 in damages.

In March of 2013, the plaintiff procured a writ of execution. With that writ in hand, a Deputy United States Marshal seized funds equal to the full amount of the judgment from the defendant's bank account. The seizure of nearly one million dollars got the defendant's attention: it immediately moved to vacate the judgment as void, see Fed. R. Civ. P. 60(b)(4), maintaining that it had no prior knowledge of the action. The plaintiff opposed the motion and, on March 25, the district court denied it. See Vázquez-Robles v. CommoLoCo, Inc., 932 F. Supp. 2d 259, 260 (D.P.R. 2013).

On the same day, the defendant moved for reconsideration, proffering additional documents. The district court rejected this motion in an unpublished order. This timely appeal ensued.

## II.  ANALYSIS

There is a threshold matter, which can swiftly be dispatched.  The plaintiff insists that the defendant submitted itself to the jurisdiction of the district court by filing a notice of appeal without an explicit reservation of its right to contest personal jurisdiction.

It is true, of course, that "the defense of lack of personal jurisdiction may be waived by express submission, conduct, or failure to assert the defense."  See Precision Etchings, 953 F.2d at 25.  Here, however, there was no act or omission that could fairly be said to constitute a waiver.  The defendant asserted its jurisdictional defense, clearly and distinctly, in its initial filing in the district court.  It persisted in that defense in its subsequent district court submissions.  The only rulings made by the district court went to the jurisdictional issue (that is, to the efficacy of service of process).

Under these circumstances, no reasonable person could doubt that the defendant's notice of appeal was meant to continue its previously stated challenge to personal jurisdiction.  Thus, the notice of appeal simpliciter was sufficient to preserve the jurisdictional defense.[1]  See Trust Co. of La. v. N.N.P. Inc., 104

---

[1] After filing its first notice of appeal, the defendant obtained an extension of time and filed a second notice of appeal (No. 13-1421).  This second notice of appeal (which will be dismissed as moot in the aftermath of this opinion) presaged the mounting of a protective challenge to the damages award.  Like the

-4-

F.3d 1478, 1485-86 (5th Cir. 1997) (holding service of process issue preserved although not specifically mentioned in notice of appeal).

This brings us to the main attraction: the district court's denial of the motion to vacate the judgment. Orders denying Rule 60(b) motions are normally reviewed for abuse of discretion, see United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 22 (1st Cir. 2006), and the plaintiff suggests that this standard obtains here. That suggestion is jejune. Where, as here, the raw facts are not legitimately in dispute and a motion to vacate is brought under Rule 60(b)(4) on the ground that the judgment is void, appellate review is de novo. See Esso Standard Oil Co. (P.R.) v. Rodríquez-Pérez, 455 F.3d 1, 4-5 (1st Cir. 2006); M & K Welding, Inc. v. Leasing Partners, LLC, 386 F.3d 361, 365 (1st Cir. 2004). We proceed accordingly.

Our obvious starting point is the record as it stood when the district court denied the motion to vacate. The motion papers featured the affidavit of Brad A. Chapman, assistant general counsel of the defendant's parent company (the Chapman Affidavit). The Chapman Affidavit vouchsafed that Prentice was the defendant's registered agent only until April 25, 2011, and that the defendant on that date switched its registered agent from Prentice to CT

first notice of appeal, this second notice of appeal cannot fairly be viewed as a waiver of the jurisdictional defense.

Corporation System (CT). Annexed to the Chapman Affidavit were two exhibits: (1) a resolution of the defendant's board of directors removing Prentice as the company's registered agent and appointing CT in Prentice's place and stead, and (2) a certification from the Secretary of State of Puerto Rico confirming that this change in the identity of the company's registered agent was effectuated on April 25, 2011 at 11:33 a.m.

As part of its opposition to the motion, the plaintiff tendered a declaration from its process server, Yma González Marrero (the González Declaration), describing the steps she had taken in an effort to ensure proper service of process. She asserted that she had looked at the website set up by the Department of State of Puerto Rico, which listed Prentice as the defendant's registered agent. Moreover, she perused the defendant's most recent annual report to the Department of State (covering the year 2011); this publicly-filed report listed Prentice as the defendant's registered agent.

She then contacted the law firm of Fiddler González & Rodríguez (FG&R), where Prentice had an address. Some unnamed person there confirmed that Prentice was the registered agent for the defendant and that process could be delivered to Kenneth C. Bury, presumably a Prentice functionary, at FG&R's offices. González proceeded to serve Bury. According to her, Bury confirmed

that Prentice was the defendant's registered agent and that he was authorized to receive process on Prentice's behalf.

With this descriptive backdrop in place, we turn to the applicable law. It is common ground that a judgment rendered in the absence of personal jurisdiction is a nullity. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). The existence of such jurisdiction normally depends on legally sufficient service of process. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). When a defendant seasonably challenges the adequacy of service, the plaintiff has the burden of showing that service was proper. See Rivera-López v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).

In the federal courts, service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992). Rule 4(h), which deals with service of process on corporations, contemplates service either in a manner consistent with the law of the forum state,[2] see Fed. R. Civ. P. 4(h)(1)(A), or on an "agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B). In this case, Puerto Rico law controls the inquiry under Rule 4(h)(1)(A), while federal law controls the inquiry under Rule 4(h)(1)(B). See

_____

[2] For this purpose, the Commonwealth of Puerto Rico is the functional equivalent of a state.

4A Charles A. Wright et al., Federal Practice and Procedure § 1103 (3d ed. updated Apr. 2014).  This distinction is largely theoretical: in most cases, relevant state and federal practice will be substantially the same, see id., and the parties do not suggest that there is a material difference here.

Both in this court and in the court below, the parties have argued the efficacy of service in terms of Puerto Rico law. Puerto Rico offers a finite number of options for effecting service on a corporation.  See P.R. Laws Ann. tit. 14, § 3781.  One such option lies at the epicenter of this appeal: a corporation may be served by delivery of process to its "registered agent."  Id.  If the registered agent is itself a corporation, that delivery may be made to any one of its enumerated officers.  Id.

The term "registered agent" is a term of art that has a well-defined meaning under Puerto Rico law.  With respect to corporations chartered in Puerto Rico, it refers to the requirement that every such corporation must denominate and maintain a registered agent within the Commonwealth.  See id. § 3542.  That registered agent must be identified in the corporation's certificate of incorporation.  See id. § 3502(a)(2).  A change in the registered agent's identity can be accomplished only by a resolution of the corporation's board of directors amending its certificate of incorporation and subsequent filing with the Department of State.  See id. § 3543.  Neither party contends that

any other vehicle exists under Puerto Rico law for effectuating a change of registered agent.

The defendant does not deny that Prentice, in the person of Bury, was served with the summons and complaint. It argues instead that Prentice was not its registered agent at the time, thus rendering the purported service nugatory. The plaintiff demurs, insisting that Prentice was the defendant's registered agent on the date of service.

The plaintiff's position is marred by an inherent contradiction: she has offered nothing to dispute that the defendant's board of directors resolved to remove Prentice as the corporation's registered agent and to substitute CT. Nor has she offered evidence to dispute that the documents embodying this change were duly filed with the Department of State well over a year before Bury was served. The González Declaration, on which the plaintiff chiefly relies, speaks to neither of these points, and it is impossible to reconcile the plaintiff's insistence that service was proper with her factual proffers.

To be sure, the district court made this leap of logic and concluded that Prentice was the defendant's registered agent. In its order, the court characterized the González Declaration as "credible" but labeled the Chapman Affidavit "unreliable." Vázquez-Robles, 932 F. Supp. 2d at 264. But this ipse dixit cannot withstand scrutiny: the Chapman Affidavit, with its attached board

-9-

resolution and certificate from the Secretary of State, resolves the dispositive points — and neither of these exhibits is contradicted or impeached by any significantly probative evidence. Taking the González Declaration as true does not alter this reality because González's account sheds no light on the critical facts.

Given the state of the record, we are left with the "definite and firm conviction" that the district court committed clear error, United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948), when it branded the Chapman Affidavit "unreliable" and treated the González Declaration as affording a basis for upholding service. The two exhibits annexed to the Chapman Affidavit constituted hard evidence of the legally dispositive issues, and their authenticity was not impugned in any way. This compelling documentary proof belies the district court's puzzling statement that the Chapman Affidavit "failed to offer any realistic evidence that" Prentice was no longer the defendant's registered agent at the time of service. Vázquez-Robles, 932 F. Supp. 2d at 264-65.

The plaintiff makes two other arguments in an effort to support the district court's assertion of personal jurisdiction. We address them sequentially.

The legal rationale for the plaintiff's first argument is not clearly stated, but that rationale appears to implicate the doctrine of apparent agency. Under this doctrine, a principal may be bound by a purported agent's acts, even in the absence of actual

authority, when a third party reasonably believes the agency relationship to exist and that reasonable belief can be traced to the principal's manifestations.  See, e.g., Ophthalmic Surgeons, Ltd. v. Paychex, Inc., 632 F.3d 31, 37 n.6 (1st Cir. 2011); Restatement (Third) of Agency § 2.03 (2006); see also Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 293 & n.2 (1st Cir. 1999) (noting that even though the nomenclature of apparent agency may not always be used in Puerto Rico law, the essential elements of the doctrine are recognized).  This apparent agency argument fails both legally and factually.

From a legal perspective, it is doubtful that the doctrine of apparent agency has any purchase in the context of service of process.  See Blair v. City of Worcester, 522 F.3d 105, 113 (1st Cir. 2008); Maiz v. Virani, 311 F.3d 334, 340 (5th Cir. 2002); Ocasio-Lozada v. United States, No. 09-1192, 2009 WL 3698026, at *1 (D.P.R. Nov. 2, 2009); cf. 4A Wright et al., supra, § 1097 (stating, in the context of serving process on an individual's agent, that "authority to accept process . . . must either be express or implied").  The plaintiff has not cited any precedent that would lead us to conclude that Puerto Rico follows a different rule.

From a factual perspective, the plaintiff's argument is even weaker.  After all, it is hornbook law that "[a]n agent's authority to act cannot be established solely from the agent's

-11-

actions; the authority must be established by an act of the principal." FDIC v. Oaklawn Aptmts., 959 F.2d 170, 175 (10th Cir. 1992) (internal quotation marks omitted); accord Restatement (Third) of Agency § 2.03 (2006). Puerto Rico law is consistent with this tenet. See Grajales-Romero, 194 F.3d at 293 (construing Puerto Rico law).

Here, the apparent agency claim rests on the González Declaration. But under the rule recounted above, any assurances that González may have received from either Bury or the anonymous person with whom she spoke at FG&R cannot be used to prop up the plaintiff's apparent agency claim.

This leaves only the defendant's 2011 corporate annual report (a form filed with the Department of State). See P.R. Laws Ann. tit. 14, § 3851(a). A second lesson drawn from agency law teaches that apparent agency can only be established through a third party's belief if that belief is reasonable. See Grajales-Romero, 194 F.3d at 293-94 (construing Puerto Rico law); see also Bates ex rel. Murphy v. Shearson Lehman Bros., Inc., 42 F.3d 79, 82 (1st Cir. 1994); Kansallis Fin. Ltd. v. Fern, 40 F.3d 476, 480 (1st Cir. 1994). Viewed through this lens, Prentice's listing as the registered agent in the annual report does not get the plaintiff very far.

The document bears the title "2011 Annual Report." Although it was filed on June 13, 2012, the document purports to

describe the state of the corporation's affairs for the year 2011. We do not think that the plaintiff could reasonably rely on a statement in this document to pinpoint the identity of the defendant's registered agent as of August 1, 2012 (the date of service).

The plaintiff's other argument builds on the fact that the Department of State's website, an informal internet-based compilation maintained by the Department for public convenience, still listed Prentice as the defendant's registered agent when service was attempted. The record is pellucid that this listing was in error. The mills of government sometimes grind exceedingly slow and, even though the identity of the defendant's registered agent had been legally changed on April 25, 2011, it appears that the Department of State simply had not gotten around to updating the website. There is not a shred of evidence, however, that this lapse was attributable to any action of the defendant.

Against this backdrop, the plaintiff argues that the defendant has an affirmative obligation to police its public records and ensure that all public presentations of its affairs (such as the listing on the website) are accurate. Since the defendant neglected this obligation, the plaintiff's thesis runs, the appropriate remedy would be to hold the defendant to the incorrect information (here, to treat Prentice as if it remained the defendant's registered agent).

The plaintiff tries to build this argument around two of our earlier decisions. See Senior Loiza Corp. v. Vento Dev. Corp., 760 F.2d 20 (1st Cir. 1985); Hosp. Mortg. Grp., Inc. v. Parque Indus. Rio Canas, Inc., 653 F.2d 54 (1st Cir. 1981). In particular, she argues by analogy from a statement that "a corporation [has a] duty to make its address known to the public by maintaining an accurate record with the Department of State." Hosp. Mortg., 653 F.2d at 56. This analogy is flawed, and the plaintiff's reliance on the two cited decisions is mislaid.

Both of our earlier cases dealt with whether the plaintiffs had made sufficient efforts to locate the defendants so as to open the door under Puerto Rico law for service by publication.[3] See Senior Loiza, 760 F.2d at 22-23; Hosp. Mortg., 653 F.2d at 55-56. Both times, service had been attempted unsuccessfully at the principal places of business reflected in the Department of State's official records, but both defendants had relocated without informing the Department of State. See Senior Loiza, 760 F.2d at 21; Hosp. Mortg., 653 F.2d at 55-56 & n.4. We determined that the plaintiffs had made efforts adequate to justify service by publication. See Senior Loiza, 760 F.2d at 23; Hosp. Mortg., 653 F.2d at 56.

_____

[3] This inquiry was necessary because service by publication is allowed only after the party to be served cannot be located although pertinent attempts have been made. See P.R. R. Civ. P. 4.6(a).

The case at hand is a horse of a quite different hue. The two cases relied on by the plaintiff involved defendants who had not informed the Department of State of address changes. Here, however, the defendant did all that was legally required: it executed and filed the paperwork necessary to effectuate a change in its registered agent. See P.R. Laws Ann. tit. 14, § 3543. Consequently, the cases are distinguishable.

In all events, there is good reason to think that the pertinent language from Senior Loiza and Hospital Mortgage should be limited to the context of determining what antecedent efforts are satisfactory to allow service by publication. Both cases were decided before the Supreme Court's decision in Omni Capital — a decision that strongly reinforces our reluctance to recognize a method of service of process not described in any Puerto Rico statute or procedural rule. There, the Court pointedly observed that it would be "unwise for a court to make its own rule authorizing service of summons." 484 U.S. at 109. The Court explained that "[l]egislative rulemaking better ensures proper consideration of a service rule's ramifications within the pre-existing structure and is more likely to lead to consistent application." Id. at 110.

Let us be perfectly clear. We appreciate the benefit to the public that attends internet-based summaries of official information provided by government agencies. One might reasonably

-15-

argue, as a matter of public policy, for a rule requiring corporations to ensure the accuracy of their listings on such websites. But the Puerto Rico legislature has not adopted such a rule, and there is no principled way in which we can create such a wide-ranging duty out of thin air. This is particularly so when, as in this instance, the website itself contains a disclaimer stating that the Department of State "does not guarantee the precision of the information presented." We hold, therefore, that the defendant had no duty to correct the Department of State's mistake.[4]

## III.  CONCLUSION

We need go no further. We are not without sympathy for the plaintiff who, despite good-faith efforts on the part of her able counsel and her process server, has fallen through a crack left open by the government. Nevertheless, a court's function in a case like this is not to weigh the equities but, rather, to determine as a matter of law whether the district court ever acquired personal jurisdiction over the defendant. It did not: the

---

[4] The Department has promulgated "standards of use" for its website, adjuring users to notify it of any errors on the site. But the plaintiff cites no authority to show that this standard somehow creates a duty to third persons. See Dennis v. City Fed. Sav. & Loan Ass'n, 21 P.R. Offic. Trans. 186, 200-02 (1988) (explaining doctrine of "contract in the prejudice of a third person"); Restatement (Second) of Contracts §§ 302, 304 (1981) (explaining that only intended beneficiaries of contracts may enforce their terms); see also Feingold v. John Hancock Life Ins. Co., ___ F.3d ___, ___ (1st Cir. 2014) (noting "strong presumption against third-party beneficiaries") [No. 13-2151, slip op. at 10].

documentary evidence submitted with the motion to vacate establishes beyond hope of contradiction that the defendant changed its registered agent from Prentice to CT on April 25, 2011. It follows inexorably that the service of process attempted by the plaintiff — service on Prentice on August 1, 2012 — was insufficient to hale the defendant into court. The judgment is, therefore, void. The plaintiff will have to prove her case in the ordinary course.

**The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion. No costs.**