The **GOVERNMENT OF THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS, Plaintiff**

v.

**DETROIT DIESEL CORPORATION, Defendant.**

Civil No. 03–1753(SEC).

United States District Court, D. Puerto Rico.

May 9, 2005.

David W. Roman, Diana L. Pagan–Rosado, Brown & Ubarri, San Juan, PR, for Plaintiff.

Antonio Gnocchi–Franco, Gnocchi–Franco Law Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendant's motion for summary judgment for lack of privity between the parties (Docket # 36).[1] Plaintiff opposed Defendant's (Docket # 49) motion and Defendant replied (Docket # 53).[2] After carefully considering the parties' filings, as well as the applicable law, and for the reasons stated herein, Defendants' motion will be **GRANTED**.

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine

issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina Munoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon*, 54 F.3d 980, 983–84 (1st Cir.1995).

---

1. Defendant also filed a motion for summary judgment for failure to meet jurisdictional amount (Docket # 37). Because we find that Defendant's motion for summary judgment for lack of privity between the parties must be granted, we will not rule on Defendant's other motion.

2. In its reply, Defendant argues that Plaintiff's opposition is untimely as Plaintiff requested, but was not granted, an extension of more

than twenty (20) days to oppose Defendant's motion (Docket # 47). Plaintiff's request was later deemed moot by the Court (Docket # 52). Although Plaintiff's request was implicitly denied, the Court will not strike Plaintiff's opposition. The same flexibility was extended to Defendant who requested leave to file motions for summary judgment substantially after the deadline set by the Court (Dockets # # 35 & 46).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Munoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b)[3], moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano-Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavarez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

In the instant case, Defendant argues that Plaintiff has failed to comply with Local Rule 56(c), which governs the contents and formats of oppositions to motions for summary judgment. The Local Rules were amended effective March 24, 2004. Thus, at the time Plaintiff filed its opposition on December 15, 2004 (Docket # 49), Local Rule 56 governed Plaintiff's response. Rule 56(c) states that:

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule....

---

3. Formerly codified as Local Rule 311(12).

Even a cursory review of Plaintiff's opposition demonstrates that Plaintiff has failed to comply with this Rule. Plaintiff instead filed its own statement of uncontested material facts. Therefore, the factual averment contained in Defendant's statement of uncontested facts which are properly supported by the record are hereby deemed admitted pursuant to Local Rule 56(e)("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."). *See Mercado–Alicea v. P.R. Tourism Co.,* 396 F.3d 46 (1st Cir.2005)(reaffirming the district court's enforcement of the anti-ferret rule, which "parties ignore : . . at their peril") (citations omitted).

### Applicable Law and Analysis

Plaintiff filed the instant action seeking to partially rescind a contract for the purchase and installation of marine engines and transmissions for the vessel M/V CARIBE QUEEN pursuant to Section 3841 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3841. Section 3841 creates a cause of action against the seller of goods for any hidden defect(s) which render the thing sold unfit for the purpose for which it was purchased or so diminishes its value that, had the purchaser known of the existence of the defect, he would not have made the purchase or would have paid a lesser price. *See Garcia–Viera v. Ciudad Chevrolet, Inc.,* 110 D.P.R. 158 (1980). Section 3841 states that:

> The vendor is bound to give a warranty against hidden defects which the thing sold may have should they render it unfit for the use to which it was destined, or if they should diminish said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it; but said vendor shall not be liable for the patent defects or those which may be visible, neither for those which are not visible if the vendee should be an expert and who by reason of his trade or profession should easily perceive them.

31 L.P.R.A. § 3841. Thus, Plaintiff alleges that it purchased an engine with hidden defects, unfit for the purpose for which it was purchased, and is therefore entitled to rescind the purchase-sale contract pursuant to Section 3843 of Title 31. *See* 31 L.P.R.A. § 3843 ("the vendee may choose between withdrawing from the contract, the expenses which he may have incurred being returned to him, or demanding a proportional reduction of the price, according to the judgment of experts").

In its motion for summary judgment Defendant avers that it did not enter into any contract with Plaintiff, and therefore there is no contract to rescind between it and Plaintiff. Instead, Defendant states that Plaintiff purchased the allegedly defective engine from a local entity named Caribe Detroit Diesel–Allison ("Caribe Detroit"), a non-party, which is completely independent and separate from Defendant.

In support of its motion, Defendant proffered the following uncontested facts:

1. Plaintiff's claim is for the resolution of a sales contract wherein Plaintiff purchased an engine and transmission for the M/V Caribe Queen (starboard side) for the amount of $79,096.79. Plaintiff requested that the allegedly defective engine be returned to the seller, and that the seller in turn return the aforementioned sum.

2. Plaintiff bought the allegedly defective engine from Caribe Detroit Diesel Allison, not from the Defendant Detroit Diesel Corporation.

3. Caribe Detroit Diesel–Allison is a division of GT Corporation, a corpora-

tion organized pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business in San Patricio Avenue, La Riviera # 54, Rio Piedras, PR.

4. GT Corporation is an independent corporation and has no control over, nor is it an agent, representative and/or stockholder of Detroit Diesel Corporation.

5. Detroit Diesel Corporation was not a party to the sales contract held between Plaintiff and Caribe Detroit Diesel Allison.[4]

(Docket 36).

In opposition, Plaintiff argues that it was led to believe that Caribe Detroit was a subsidiary or authorized agent of Defendant's and that under the doctrine of apparent authority, the Court should, at a minimum, find that summary judgment is not appropriate. *See Grajales–Romero v. Am. Airlines, Inc.*, 194 F.3d 288 (1st Cir.1999)("Under Puerto Rico law, an apparent principal may be held liable for the acts of its apparent agent where the apparent principal's action 'led the plaintiffs to reasonably believe [in its] representation' of the authority and control over the apparent agent, through the apparent principal's conduct, including its 'silence, evasive language and appearances.' ")(*quoting Berrios v. U.P.R.*, 116 D.P.R. 88, 16 Offic. Trans. 112, 122 (1985)). Plaintiff also points to the resemblance between the two corporation's names, logos, and typeset. Thus, Plaintiff alleges that Defendant and Caribe Detroit behaved in such a manner that it had no way of knowing that Caribe Detroit was not Defendant's agent.

■ The doctrine of apparent authority applies to cases where: (1) the plaintiff trusted in "good faith" in the conduct before him and (2) said trust could lead a reasonable person to believe that in fact there was a principal-agent relationship. *Berrios*, 116 D.P.R. at 97 n. 2; *Vega v. Med. Serv. Adm.*, 117 D.P.R. 138, 17 Offic. Trans. 163, 173 (1986). However, both *Berrios* and *Vega* dealt with the existing confusion facing the malpractice plaintiffs with respect to Centro Médico's centralized facilities and the danger that those plaintiffs' claims could be frustrated by said confusion. Thus, the Puerto Rico Supreme Court concluded that the government, specifically, the Administration of Medical Services of Puerto Rico, could be held responsible under the doctrine of apparent authority even if the medical center(s) in question were not operated by the government in actuality.

Plaintiff has cited no case, and the Court knows of none, in which the apparent authority doctrine has been taken out of the torts field and extended to contractual disputes. As above described, the two cases cited by Plaintiff, *Berrios* and *Vega*, are clearly distinguishable from the case at bar. Moreover, in *Berrios* the Puerto Rico Supreme Court highlighted that the defendant's conduct, including within the litigation, induced the plaintiffs into reasonably believing that they exercised control over the local medical center and that it was nearly impossible for the plaintiffs and other persons utilizing the medical center to know otherwise. That is clearly not the case here. The only statement concerning Caribe Detroit made by Defendant is contained in a letter received by Plaintiff describing Caribe Detroit as a "loyal part of the Detroit Diesel family." (Docket # 49,

---

**4.** This last statement does not contain a citation to the record in support. Instead, it represents Defendant's interpretation and conclusion. However, upon review of the evidence in the record and considering Plaintiff's failure to contest Defendant's statement, we find that Defendant in fact was not a party to the sales contract.

Exhibit 1–A). However, Plaintiff overlooks the fact that the same document explains that Caribe Detroit is **their Distributor.** *Id.*

 Notwithstanding Plaintiff's allegations, Plaintiff knew as early as August 12, 2003 that Caribe Detroit was not an agent or subsidiary of Defendant. On said date Caribe Detroit filed a motion to quash service of summons averring that Plaintiff had served summons on its Comptroller who was not authorized to receive service of process in the name of. Defendant (Docket # 3). In said motion, Caribe Detroit expressly stated that Defendant was a completely separate and independent entity and that it was neither an employee, official, nor authorized agent of Defendant. Caribe Detroit further stated that it was a division of GT Corporation, an independent corporation.

Furthermore, since its initial appearance in this action, Defendant has repeatedly reiterated that it was not party to the contract which Plaintiff seeks to rescind. In its answer to the complaint, filed October 16, 2003, Defendant denied selling to Plaintiff or installing any marine engines or transmissions in the vessel M/V Caribe Queen and denied having any agents in Puerto Rico (Docket # 13). Again, in its portion of the Joint Case Management Memorandum, filed December 17, 2003, Defendant stated that it did not enter into any purchase-sale contract with . Plaintiff and that Plaintiff instead entered into said contract with Caribe Detroit, identifying it as a third party not included in the complaint (Docket # 16). Finally, Defendant again stressed the same in the Joint Pretrial Order filed August 6, 2004 (Docket # 34).

Finally, as evidenced by both parties' exhibits, Plaintiff exchanged checks and invoices as well as various correspondence with Caribe Detroit without any interven-

tion from Defendant. All the checks were made to the order of Caribe Detroit, not Defendant, and all the correspondence as well as the invoices carried the Caribe Detroit logo, specified that it was a division of GT Corporation, and made no reference to Defendant.

In conclusion, it is uncontested that Defendant was not privy to the contract between Plaintiff and Caribe Detroit and that Caribe Detroit is not its agent. Therefore, given the inapplicability of the apparent authority doctrine, Defendant's motion for summary judgment is **GRANTED** and Plaintiff's claim is hereby **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**